# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) | No. 99-1063 JP (BB) |
| JESUS GUADALUPE FRANCO, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

THIS MATTER comes before the Court on Defendant's Motion to Suppress Evidence, filed October 19, 1999. The Court held an evidentiary hearing on November 2, 1999. Having fully considered the evidence adduced at the hearing, Defendant's Motion, the Response filed by the United States of America, the arguments of counsel, and the applicable law, the Court finds that Defendant's Motion to Suppress Evidence is not well taken and should be DENIED. The Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

1. On June 22, 1999, United States Border Patrol Agent Arlin Kaul was traveling south on New Mexico Highway 11 performing patrol duties. Agent Kaul has been with the United States Border Patrol for over four years. He has been assigned to the Deming, New Mexico station for that period of time. Highway 11 is a relatively lightly

traveled road in southwest New Mexico that runs directly north from the Mexican border to the city of Deming, New Mexico. Highway 11 intersects with New Mexico Highway 9 in Columbus, New Mexico, approximately three miles north of the border with Mexico. Highway 9, also known as the Anapra Road, parallels the international border approximately three miles north of Mexico, and connects the communities of Santa Teresa, Sunland Park, and Columbus, New Mexico. Due to their proximity to the Mexican border, combined with the fact that these highways permit vehicles to circumvent the fixed United States Border Patrol checkpoints on I-10 and I-25, Agent Kaul was aware that Highways 9 and 11 are often utilized as illegal smuggling routes. Agent Kaul was also aware that he and other Border Patrol agents stationed in Deming, New Mexico have apprehended numerous narcotics and alien smuggling loads in recent months traveling west on Highway 9 and northbound on Highway 11.

2. As he observed northbound traffic in his marked Border Patrol Chevrolet Tahoe, at around 11:00 a.m., Agent Kaul saw a light blue 1989 Toyota Camry, with Texas license F17 BLG, heading north at a point approximately nine miles from the Mexican border. Agent Kaul slowed his car in order to observe the Camry as it passed and noted the driver and sole visible occupant of the vehicle was a young male. Agent Kaul noticed that the Toyota Camry appeared to be riding low in the rear, particularly given its single visible occupant. Agent Kaul turned around and pulled up behind the Camry as it continued northbound.

3. Agent Kaul is familiar with the local traffic in this area and did not recognize the Camry as one owned by a local resident. As Agent Kaul followed the Camry he requested from his dispatcher that a registration check and 72-hour lane check be performed on the Texas license.

4. The license check returned to a Frances Hernandez from El Paso, Texas. The 72-hour lane check returned positive, indicating the Camry had entered the United States from Mexico, via the Bridge of the Americas in El Paso, Texas, approximately four and one-half hours earlier that morning, at 6:17 a.m., mountain standard time. Because the Camry was headed north on Highway 11, Agent Kaul testified that he concluded the driver was headed to Deming, New Mexico. Because of his familiarity with the roads in the area, Agent Kaul knew that the fastest, safest and most direct route from El Paso, Texas to Deming, New Mexico was to use Interstate 10. Agent Kaul suspected that the driver of the Camry had taken this alternate route in order to bypass the fixed Border Patrol checkpoint located on I-10 between Las Cruces and Deming, New Mexico.

5. Based upon these facts, together with his training and experience, Agent Kaul pulled over the Camry at milepost 13 on New Mexico Highway 11.

6. An uncontested search of the trunk of the Camry revealed two large black duffel bags and two black plastic garbage bags containing a total of approximately 187.5 net pounds of marijuana. Agent Kaul arrested the Defendant.

7.      On October 19, 1999, Defendant filed the instant *Motion to Suppress Evidence* flowing from the stop.

## II. CONCLUSIONS OF LAW

Border patrol agents on roving patrol may stop vehicles when they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that those vehicles' occupants may be involved in criminal activity. United States v. Brignoni- Ponce, 422 U.S. 873, 884 (1975). "[A]ny number of factors" might contribute to an agent's decision to stop a vehicle on reasonable suspicion.[1] Id. The law does not specify a "minimum number of factors necessary to constitute reasonable suspicion or any outcome determinative criteria." United States v. Lopez-Martinez, 25 F.3d 1481, 1484 (10th Cir.1994). "In all instances, however, the agent is entitled to assess the facts in light of his experience in detecting criminal activity." United States v. Cantu, 87 F.3d 1118, 1121 (10th Cir.1996) (citing, Brignoni-Ponce, 422 U.S. at 885). "While the necessary level of suspicion is considerably less than proof of wrongdoing by a

---

[1] In determining whether there is reasonable suspicion to stop a car in the border area, officers may consider any number of factors, including: (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded. Lopez-Martinez, 25 F.3d at 1484-85 (citing, Brignoni- Ponce, 422 U.S. at 884-85).

preponderance of the evidence, the Fourth Amendment requires 'some minimal level of objective justification.'" Cantu, 87 F.3d at 1121 (*citing*, United States v. Sokolow, 490 U.S. 1, 7, (1989)).

In determining whether a roving border patrol agent had reasonable suspicion to stop a vehicle, courts must look at the totality of the circumstances, which in turn must evidence a "particularized and objective basis for suspecting the ... person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981); Cantu, 87 F.3d at 1121.. The process necessarily does not deal with hard certainties, but rather with probabilities based upon evidence as understood by those versed in the field of law enforcement. Id. "Rather, the reasonable suspicion calculus turns on whether the specific articulable facts, when viewed together through the lens of a reasonable law enforcement officer, justified a brief roadside detention to determine whether the vehicle contained undocumented aliens [or contraband]." Lopez-Martinez, 25 F.3d at 1484. Based upon the "totality of the circumstances," Agent Kaul had reasonable suspicion to stop the Camry driven by the defendant. Id.

Agent Kaul was aware that he and fellow agents had apprehended numerous alien and narcotics smuggling loads on Highways 9 and 11 in recent months and that smugglers were utilizing these routes in an attempt to circumvent the fixed checkpoint on I-10. Brignoni-Ponce, 422 U.S. at 884 (characteristics of area and previous experience with alien

5

traffic are factors supporting stop); see also United States v. Maestas, 2 F.3d 1485, 1493 (10th Cir. 1993) ("[L]aw enforcement officers are permitted to pool information.").

Agent Kaul observed a Toyota Camry that appeared to be riding low in the rear. Brignoni-Ponce, 422 U.S. at 885 (aspects of the vehicle, including that the vehicle appears heavily loaded, are factors that support stop). Photographs[2] taken by agents shortly after defendant Franco's arrest in this case show how over 200 pounds of marijuana and packaging in the trunk of the Camry would make the car ride substantially lower in the rear and cause the nose of the car to appear elevated, facts observable by the trained eye of a reasonable law enforcement officer.

Agent Kaul encountered and stopped the defendant within 10-15 miles of the international border with Mexico. Brignoni-Ponce, 422 U.S. at 885 (the proximity of the area to the border is a factor that supports stop).

Prior to stopping the defendant, Agent Kaul received a positive return on a 72-hour lane check, indicating the defendant's car had crossed into the United States from Mexico through El Paso, Texas, just four and one-half hours prior to Agent Kaul encountering the Camry on Highway 11. Agent Kaul was also aware that Highways 9 and 11 are often smuggling routes. Brignoni-Ponce, 422 U.S. at 885 (patterns of traffic and smuggling routes are factors supporting stop).

---

[2] Government's Exhibits 2-10.

Viewing the facts of this case through the lens of a trained border patrol officer, and based upon the totality of the circumstances, Agent Kaul possessed sufficient reasonable suspicion to stop Defendant's vehicle in this case. For these reasons, Defendant's Motion to Suppress Evidence should be denied.

Wherefore,

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence, filed October 19, 1999, be and hereby is **DENIED**.

                                                **BRUCE D. BLACK**
                                                United States District Judge

Counsel for Government:

    David B. Weaver, Assistant U.S. Attorney, Las Cruces, NM

Counsel for Defendant:

    Jane Greek, Assistant Federal Public Defender, Las Cruces, NM